Ben Conway, State Bar No. 246410
bconway@publiccounsel.org
**Public Counsel**
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 637-3823 direct
(213) 385-9089 fax


Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Jay F.** and **Shari L.**, individually, and A.F., a minor, by and through his guardian ad litem, Shari L.,<br><br>Plaintiffs,<br><br>v.<br><br>**William S. Hart Union High School District**, a local educational agency,<br><br>Defendant. | Case No.: 2:16-cv-05117 SJO (GJSx)<br><br>**Declaration of Ben Conway in Support of Plaintiffs' Motion to Supplement the Administrative Record**<br><br>Hon. S. James Otero<br>Date: January 30, 2017<br>Time: 10:00am<br>Location: Courtroom 10C, Tenth Floor, 350 W. 1st St., Los Angeles, CA 90012 |

## Declaration of Ben Conway

I, Ben Conway, declare that if called as a witness I could and would testify competently as follows:

1. I submit this declaration in support of Plaintiffs' motion to supplement the administrative record in this case.

2. I am an attorney licensed to practice law in the State of California. I am admitted to practice in the Central District of California and am counsel for Plaintiffs in this case both at the administrative level and now in this Court. I am familiar with the proceedings at both levels in this matter.

3. The facts set forth herein are based on my personal knowledge. Where I declare beliefs, I have set forth the bases of those beliefs

## Procedural Background

4. As counsel, I co-drafted an administrative due process complaint on behalf of Plaintiffs Shari L., Jay F., and A.F. with my former co-counsel Christy Ferioli.

5. Plaintiffs filed that special education administrative due process complaint with the California Office of Administrative Hearings ("OAH") in February 2015.

6. In relevant part, Plaintiffs pleaded two sets of claims for resolution—one set of "expedited" claims alleging that Hart UHSD violated IDEA by disciplining A.F. unlawfully, and a second set of "non-expedited" claims alleging that Hart UHSD violated IDEA by failing to provide A.F. an appropriate education.

7. OAH numbered Plaintiffs' case 2016020807 and bifurcated the expedited claims from the non-expedited IDEA claims.

8. OAH conducted an administrative hearing regarding Plaintiffs' expedited claims on March 22, 23, 24, 29, and 30 of 2016. Ms. Ferioli and I represented Plaintiffs at this hearing.

9. OAH issued a final decision on Plaintiffs' expedited claims on April 16, 2016. I have read that decision.

10. Plaintiffs attached a copy of that decision to their complaint initiating this matter. It appears in the docket as Document 2-1.

11. OAH sought expert testimony about what services A.F. needed in the spring of 2015. (Doc. 2-1, p. 16, ¶ 24.)

12. OAH sought expert testimony establishing that A.F. needed an evaluation after the January 2015 incident. (Doc. 2-1, p. 16, ¶ 30.)

13. OAH sought expert testimony that appropriate services would have prevented further behavioral incidents. (Doc. 2-1, p. 17, ¶ 31.)

14. OAH sought expert testimony "proving that any of Student's past history of behaviors were relevant to Student's" January 2015 behavior and that "that his actions were not preplanned, as Ms. Ramirez opined." (Doc. 2-1, p. 14, ¶ 12.)

15. OAH relied heavily on the testimony of Hart UHSD employee Laura Ramirez in that April 2016 decision.

16. On July 15, 2016, ninety days after OAH's expedited decision, Plaintiffs' appealed portions of that expedited decision. Plaintiffs' complaint is Document 2 in the docket of this case.

17. On September 6, 2016, my office received via courier service a copy of case initiating documents in a matter entitled *Hart Union High School District v. Jay F___*, case number 2:16-cv-05226. I have read those documents.

18. Based on the ECF stamp at the top of that complaint, I believe that case number 2:16-cv-05226 was filed on July 15, 2016.

19. In case number 2:16-cv-05226, William S. Hart Union High School District appealed a different part of that March 2016 expedited decision.

20. OAH conducted a second administrative hearing regarding Plaintiffs' non-expedited claims on August 23, 24, 25, 29, 30 and 31, 2016. Ms. Ferioli and I

1 | represented Plaintiffs at this hearing.

2 |     21.    OAH issued a final decision on Plaintiffs' non-expedited claims on October 24, 2016. I have read that decision.

    22.    Ms. Ferioli and I maintained regular contact with Plaintiffs since that time. Plaintiffs have not yet appealed the October 2016 non-expedited decision.

    23.    I have communicated with opposing counsel, Daniel Gonzalez, on numerous occasions since that time. Based on my communications, I believe that William S. Hart Union High School District has not yet appealed that October 2016 non-expedited decision.

    24.    Ms. Ferioli and I have obtained the official administrative records for both the expedited and non-expedited proceedings in this matter.

    25.    On or about May 27, 2016, our office received the record for the expedited proceeding.

    26.    On or about December 1, 2016, our office received the record for the non-expedited proceeding.

    27.    I have reviewed those records at a macro level—I have not yet reviewed them closely. Based on my preliminary review, I believe that the official administrative records for both proceedings are complete.

### Meet and Confer Efforts

    28.    As a part of Plaintiffs' Rule 26(a) disclosures, Ms. Ferioli informed opposing counsel that Plaintiffs intended to introduce testimony from Dr. Lauren Stevenson. Plaintiffs included Dr. Stevenson's *curriculum vitae* and a copy of her November 2016 report.

    29.    Ms. Ferioli and I spoke with Hart UHSD's counsel, Mr. Gonzlez, by phone on October 11, 2016, regarding the Parties' Rule 26(f) Joint Report.

    30.    During that call, Ms. Ferioli explained to Mr. Gonzalez that Plaintiffs intended to request that this Court supplement the administrative record.

    31.    Mr. Gonzalez stated that Defendants would oppose such a request.

32. This Court convened a scheduling conference on October 31, 2016. Ms. Ferioli attended that conference. After the conference, Ms. Ferioli spoke with Mr. Gonzalez in person briefly. Ms. Ferioli again explained to Mr. Gonzalez that Plaintiffs intended to request that this Court supplement the administrative record.

33. Mr. Gonzalez again stated that Defendants would oppose such a request. about this request

34. Ms. Ferioli and I spoke with Mr. Gonzlez by phone on November 18, 2016. During that call, Ms. Ferioli again explained to Mr. Gonzalez that Plaintiffs intended to request that this Court supplement the administrative record.

35. Mr. Gonzalez again stated that Defendants would categorically oppose such a request.

36. Based on those conversations, I believe that this motion is necessary.

### Proffered Evidence

37. I have reviewed A.F.'s educational records in this case.

38. Among those records, are an April 2015 evaluation report drafted by , Defendant's employee and agent Laura Ramirez.

39. Ms. Ramirez testified at both the expedited and non-expedited portions of this matter about that evaluation.

40. Ms. Ramirez conceded in the August 2016 hearing that she did not meet with, interview, or observe A.F. as part of her April 2015 evaluation.

41. Ms. Ramirez conceded in the August 2016 hearing that she did not speak with A.F.'s parents, any teacher who had taught A.F. in a classroom, or any of A.F.'s therapists as part of her April 2015 evaluation.

42. Ms. Ramirez conceded in the August 2016 hearing that she only used one assessment tool and that she did not directly administer that tool to A.F. Instead, she mailed it home.

43. In February 2016, Plaintiffs requested that Defendants provide

Plaintiffs an independent educational evaluation of minor A.F. under IDEA because of the deficiencies in Ms. Ramirez's evaluation.

44. Defendant neither provided that independent educational evaluation nor filed for an administrative due process hearing to prove that Ms. Ramirez's evaluation was appropriate.

45. I have reviewed OAH's October 2016 decision on the non-expedited claims in this matter.

46. In that October 2016 decision, OAH found that Ms. Ramirez's evaluation was so inadequate that it denied Plaintiffs a Free Appropriate Public Education under IDEA.

47. From February to June 2016, Ms. Ferioli contacted at least six potential evaluators. During that time, she and I spoke regularly about her efforts.

48. Defendant proposed some of the evaluators Ms. Ferioli contacted.

49. One of Defendant's proposed evaluators was not independent because that person's previous employment was at Hart UHSD.

50. Another of Defendant's proposed evaluators was not independent because that person's only employment was at school districts—Plaintiffs could find no evidence they had ever conducted an independent evaluation.

51. Two more of Defendant's proposed evaluators stated to Ms. Ferioli that they did not feel they were appropriate for this evaluation.

52. The only evaluator that Plaintiffs identified as appropriate and available was Dr. Lauren Stevenson.

53. Over the summer of 2016, Dr. Stevenson evaluated minor A.F.

54. Her evaluation was still ongoing during the August 2016 non-expedited hearing in this matter, so she prepared an "abbreviated" twenty-nine page evaluation report summarizing her findings.

55. Dr. Stevenson testified under oath for approximately three hours at the August 2016 non-expedited proceeding in this matter.

56. Hart UHSD's counsel cross-examined her.

57. Dr. Stevenson based her testimony on her evaluation of A.F. including extensive record review, administration of standardized testing batteries, and clinical interviews with A.F., his parents, and his former therapists.

58. Dr. Stevenson testified about how she used her clinical judgment in diagnosing A.F. with borderline personality disorder.

59. Dr. Stevenson explained what borderline personality disorder is and that it is a very serious diagnosis.

60. Dr. Stevenson testified about how A.F.'s educational history informed her impressions of him.

61. She testified generally about how various behavioral incidents were was related to A.F.'s disability at the time of the incidents in question.

62. Dr. Stevenson testified that people like A.F. who have borderline personality disorder require an intervention called dialectical behavioral therapy. She explained that dialectical behavioral therapy is both the "gold standard" for people with borderline personality disorder and also the only research-based intervention for such people.

63. Dr. Stevenson explained how Dr. Ramirez's evaluation was inadequate and. opined on when Hart UHSD should have appropriately evaluated A.F.

64. Dr. Stevenson's August 2016 abbreviated report discusses many of those same issues described in paragraphs 57-63. That report was admitted into evidence in the August 2016 non-expedited proceeding.

65. The administrative record from the August 2016 non-expedited proceeding includes both the transcript of Dr. Stevenson's testimony and the copy of her August 2016 report that was admitted into evidence.

66. During the August 2016 hearing, OAH precluded Dr. Stevenson from expressing her specific opinions on whether A.F.'s disability caused the 2015

behaviors for which he was expelled.

67. The one exception to the preclusion described in paragraph 66 is that OAH allowed Dr. Stevenson to testify about her opinion of an August 2015 incident. But OAH only allowed me elicit that testimony after I made a showing of proof that I was eliciting the testimony to establish her independence from Mr. F. and Ms. L. and not for the truth of that opinion.

68. As discussed above, Hart UHSD's employee Laura Ramirez testified under oath a second time at the August 2016 non-expedited proceeding.

69. Some of Dr. Ramirez's testimony contradicted her March 2016 testimony in the non-expedited proceeding. This conflicting testimony addresses how A.F.'s extensive educational history was related to his disability at the time of the incidents in question, what services would have been appropriate for A.F., and what evaluations would have been appropriate for A.F.

70. In November 2016, Dr. Stevenson issued her final evaluation report. She provided Ms. Ferioli and me copies of that report. I have read that report.

71. Dr. Stevenson's November 2016 final report explains, among other things, how A.F.'s extensive educational history was related to his disability at the time of the incidents in question, what services would have been appropriate for A.F., and what evaluations would have been appropriate for A.F.—the expert evidentiary gaps that OAH cited in its April 2016 expedited decision at issue here.

I swear under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct.

Executed on December 26, 2016, in Los Angeles, California

_____
Ben Conway